UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| ARLA CRANE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:24-CV-3 RLW |
| | ) |
| ARCHER DANIELS MIDLAND COMPANY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Archer Daniels Midland Company's ("ADM") Motion to Strike and Dismiss Count I and Dismiss First Amended Complaint Pursuant to Fed. R. Civ. Pro. 12(b)(2) and 12(b)(6). (ECF No. 34). The motion is fully briefed. For the reasons set forth below, the Court will grant in part and deny in part the motion.

**Background**

In this removed diversity action, Plaintiff Arla Crane, a breeder of show rabbits, alleges tortious conduct by ADM in manufacturing rabbit feed which caused the death of her entire breeding rabbit population. Crane asserts claims of breach of implied warranty of merchantability (Count I), negligence (Count II), and violation of the Missouri Merchandising Practices Act ("MMPA") (Count III). (Amended Compl., ECF No. 29). Upon review of briefing on ADM's previous motion to dismiss under Rules 12(b)(2) and 12(b)(6) (ECF Nos. 14, 20, 23), the Court entered a memorandum and order finding that it lacked personal jurisdiction

1

over ADM and granting Crane leave to file an amended complaint (ECF No. 28).  Crane timely filed an amended complaint, in which she alleges the following.

Crane resides in Palmyra, Missouri.  (Amended Compl., ¶ 1).  At all times relevant to this action, Crane "raised over one hundred (100) adult breeding rabbits for the purpose of breeding and selling their progeny as show rabbits."  *Id.* ¶ 11.  ADM, a Delaware corporation with its principal place of business in Illinois, is a nutrition company that specializes in formulating animal nutrition products such as feed and supplements, which it markets to consumers.  *Id.* ¶ 9.  As part of ADM's regular business operations, it purchases, sells, distributes, and processes grain and feed within Missouri, and it has over ten physical locations in the state from which it transacts business.  *Id.* ¶ 10.  ADM advertises its products in Missouri through mailings, distribution of product in promotional packaging, and sponsorship of local rabbit shows.  *Id.* ¶¶ 14, 15, 18.  ADM also advertises its products by posting photos of local rabbit show winners on social media; in one instance, ADM posted a photo of Crane and her daughter after she won a local show.  *Id.* ¶ 16.

From November 2022 to February 2023, Crane purchased specially formulated rabbit feed named "Pen Pals Professional Rabbit 18" (the "Feed") from ADM's store location in Quincy, Illinois for the purpose of feeding it to her rabbit population.  *Id.* ¶ 12.  Crane had received promotional products at her residence from ADM, including magazines advertising the Feed.  *Id.* ¶ 14.  The Feed is a formulated product for the purpose of use as rabbit feed and is furnished in sealed bags with marketing and promotional materials on the packaging.  *Id.* ¶ 18.  ADM advertises the Feed as "'a complete feed specially fortified for rabbits requiring higher nutritional levels,'" including "show rabbits."  *Id.* ¶ 20.  ADM sells the Feed in retail locations

2

throughout Missouri, including the Farm & Home Supply store in Hannibal, Missouri. *Id.* ¶ 13. To Crane's knowledge, the Feed she purchased was manufactured at the Quincy location. *Id.* ¶ 17.

Crane fed the Feed directly to her rabbit population and did not add additional ingredients or supplements. *Id.* ¶ 21. Shortly thereafter, the rabbits became averse to eating and lost weight. *Id.* ¶ 22. Crane sent a feed sample to the University of Missouri, Veterinary Medical Diagnostic Laboratory for testing. *Id.* ¶ 23. The test results showed that the feed sample contained vomitoxin in an amount great enough to be toxic to and ultimately cause the death of the rabbits. *Id.* ¶ 24. Crane subsequently observed the death of her entire breeding rabbit population, causing her to "incur the loss of future progeny of breeding stock," as well as monetary damages. *Id.* ¶¶ 25, 30. On multiple occasions, ADM sent its employees to Crane's residence to retrieve samples of the Feed and dead rabbits for testing purposes. *Id.* ¶ 26. On or around May 1, 2023, Crane sent written notice of her injury to ADM. *Id.* ¶ 27.

ADM now renews its motion to dismiss arguing that Crane has failed to state a claim for relief as to Counts I and III, and that all claims should be dismissed due to lack of personal jurisdiction over ADM. (ECF No. 34). The Court must first resolve the issues surrounding personal jurisdiction before it may conduct a review under Rule 12(b)(6).

## Discussion

### A. Personal Jurisdiction

"Personal jurisdiction over a defendant represents the power of a court to enter a valid judgment imposing a personal obligation or duty in favor of the plaintiff." *Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592 (8th Cir. 2011) (internal quotation

3

omitted).  The plaintiff "bear[s] the burden of establishing a prima facie showing of jurisdiction," and the Court "views the facts in the light most favorable to the plaintiff." *Kaliannan v. Liang*, 2 F.4th 727, 733 (8th Cir. 2021) (internal quotation omitted).  The evidentiary showing required at this stage in minimal.  *Brothers & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022).  "A prima facie showing is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state."  *Id.* (internal quotation omitted).  The Court may, however, "look beyond the pleadings to determine whether personal jurisdiction exists, including reviewing affidavits and other exhibits."  *Penderson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020) (citation omitted).

"Personal jurisdiction can be specific or general."  *Viasystems*, 646 F.3d at 593. "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions with the forum state, while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose."  *Id.* (cleaned up).  The record does not establish that ADM is subject to general or all-purpose jurisdiction in Missouri, and the Court does not construe Crane's filings as asserting such.  Thus, the Court need only address specific jurisdiction.

For specific jurisdiction to exist, "the suit must arise out of or relate to the defendant's contacts with the forum state."  *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S 255, 262 (2017) (cleaned up).  "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Id.* (cleaned up).

4

"Specific personal jurisdiction can be exercised by a federal court in a diversity suit only if authorized by the forum state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment." *Viasystems*, 646 F.3d at 593 (citation omitted). Missouri's long-arm statute and due process inquiries "are separate." *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012). Defendant argues that neither permits the Court's exercise of specific personal jurisdiction here.

**1. Missouri's Long-Arm Statute**

The "'ultimate objective'" of Missouri's long-arm statute, Mo. Rev. Stat. § 506.500, is "'to extend the jurisdiction of the courts of [Missouri] over nonresident defendants to that extent permissible under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States.'" *Clune v. Alimak AB*, 233 F.3d 538, 541 (8th Cir. 2000) (quoting *State v. Pinnell*, 454 S.W.2d 889, 892 (Mo. banc 1970)). Missouri's long-arm statute authorizes personal jurisdiction over defendants who, *inter alia*, transact any business within the state, commit a tortious act within the state, or own, use, or possess any real estate situated in the state, so long as the cause of action arises from such conduct. Mo. Rev. Stat. § 506.500.1(1), (3)-(4). These enumerated categories are construed broadly. *See Viasystems*, 646 F.3d at 593; *Clune*, 233 F.3d at 541.

Crane has alleged that ADM transacts business, has committed a tort, and owns, uses, or possess real estate, all within Missouri. As an initial matter, Plaintiff has failed to allege how any real estate owned, used, or possessed by ADM in Missouri relates to her cause of action. Missouri's long-arm statute is therefore not satisfied on this basis. The Court will therefore turn to the two remaining bases.

5

### a. *Transaction of Any Business Within Missouri*

ADM contends that this matter does not arise from any of its business transactions within Missouri, but rather from a business transaction that occurred in Illinois, and that Missouri's long-arm statute therefore cannot be satisfied on this enumerated ground. (ECF No. 34). Crane argues that ADM transacted business within Missouri for all intents and purposes when it advertised the Feed in Missouri and thereby solicited her business. (ECF No. 37).

"Missouri courts construe 'transaction of any business' broadly," and "a single transaction may confer jurisdiction if that is the transaction that gives rise to the suit." *Flooring Sys., Inc. v. Beaulieu Grp., LLC*, 187 F. Supp. 3d 1091, 1095 (E.D. Mo. May 10, 2016) (quoting *Dairy Farmers*, 702 F.3d at 476). "A person or firm transacts business by visiting Missouri or sending its product or advertising here." *Id.* (quoting *Dairy Farmers*, 702 F.3d at 476).

Crane alleges that ADM markets and sells its products, including the Feed, within Missouri. Crane also alleges that ADM markets its products through direct mailings, sponsorship of local rabbit shows, postings on social media, and distribution of its products in promotional packaging. As to ADM's solicitation of her business specifically, Crane alleges that ADM sent magazines directly to her home advertising the Feed, that on one occasion she participated in and won a local rabbit show sponsored by ADM, and that ADM thereafter posted a photo of her and her daughter at that show on one of its social media platforms. Because of these marketing efforts, Crane contends she was enticed to travel to ADM's nearby store location in Quincy, Illinois in order to purchase the Feed. Viewing these allegations in a light most favorable to Plaintiff, the Court finds that the record demonstrates ADM advertised within Missouri, and that through its targeted marketing efforts solicited Crane's business which

6

resulted in her purchasing the Feed.  Thus, the underlying business transaction from which Crane's cause of action arises originated in Missouri.  The Court therefore concludes that Missouri's long-arm statute is satisfied based on ADM's alleged business transactions within the state.

### b. Commission of a Tortious Act Within Missouri

ADM argues that because Plaintiff has failed to state a claim for negligence she has failed to make a prima facie showing of personal jurisdiction on this enumerated ground.  Crane's argument in response focuses on the foreseeability to ADM that its negligent actions could result in consequences in Missouri.

The commission of a tortious act under Missouri's long-arm statute is also construed broadly.  *See Bryant v. Smith Interior Design Grp., Inc.*, 310 S.W.3d 227, 232 (Mo. banc 2010). "'[E]xtraterritorial acts that produce consequences in [Missouri]' are subsumed under the tortious act section of the long-arm statute." *Flooring Sys.*, 187 F. Supp. 3d at 1095-96 (quoting *Bryant*, 310 S.W.3d at 232)).  "The Eighth Circuit has opined that 'foreseeability is the standard to be applied' when evaluating whether jurisdiction is appropriate under Missouri's long-arm statute 'over a tortious act occurring in another state with actionable consequences in Missouri.'" *Stifel, Nicolaus & Co., Inc. v. Sapient Cap., LLC*, 4:23-cv-241-MTS, 2024 WL 1014069, at *3 (E.D. Mo. Mar. 8, 2024) (quoting *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 910 (8th Cir. 2012)).  Under this standard, "if a defendant can reasonably foresee his or her negligent actions having consequences felt in Missouri, jurisdiction is authorized." *Myers*, 689 F.3d at 911.  A plaintiff seeking to invoke long-arm jurisdiction based on alleged tortious conduct by a defendant must, however, make a prima facie showing of the validity of her tort claim. *Bender*

7

*v. Boyreau*, 4:20-CV-001850 AGF, 2021 WL 5451390, at *6 (E.D. Mo. Mar. 30, 2021) (citation omitted). In other words, a plaintiff must show that the defendant's alleged conduct amounts to a tort in Missouri. *Id.*

> Crane alleges the following with respect to her negligence claim, as set forth in Count II:
>
> ADM owed a duty to Plaintiff to provide a product suited for Plaintiff's rabbits that provided a safe and nutritious feedstuff…
>
> ADM breached that duty to Plaintiff in that ADM sold Feed which contained a high level of vomitoxin which is toxic to rabbits…
>
> As a company that provides feed for animal consumption and nutritional purposes, ADM knew and understood that breaching its duty to Plaintiff would result in health issues or death to the animals that consume it…
>
> It was reasonably foreseeable to ADM that animal owners in that state of Missouri would purchase feed at its' Quincy location…
>
> As a direct and proximate result of ADM's breach, Plaintiff's rabbit population was killed and has also caused Plaintiff to lose future progeny...

(Amended Compl., ¶¶ 46-50).

To state a claim for negligence under Missouri law, a plaintiff must allege: "1) the existence of a duty to conform to a certain standard of conduct to protect others against unreasonable risks; 2) breach of the duty; 3) proximate causation; and 4) actual damages." *Howard v. Frost Nat'l Bank*, 458 S.W.3d 849, 853 (Mo. Ct. App. 2015) (citation omitted). ADM contends that the amended complaint allegations consist of vague speculation and fail to describe the negligent action of which Crane accuses ADM. The Court disagrees and finds that Crane has sufficiently pled duty, breach, causation, and damages. The Court further finds that it was reasonably foreseeable to ADM that any negligent manufacturing and subsequent sale of the Feed in Quincy, Illinois could have actionable consequences in Missouri, particularly when

8

ADM marketed the Feed to nearby Missouri residents like Crane. The Court therefore concludes that Missouri's long-arm statute is satisfied based on ADM's alleged tortious conduct within the state.

### 2. Due Process

"Due process requires that there be minimum contacts between the nonresident defendant and the forum state such that the assertion of personal jurisdiction is consistent with traditional notions of fair play and substantial justice." *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that it should reasonably anticipate being haled into court there." *Id.* (cleaned up). Specific jurisdiction exists when the defendant "purposely directs its activities at the forum state and litigation results from injuries relating to the defendant's activities in the forum state." *Myers*, 689 F.3d at 912-13 (cleaned up). The defendant "must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State," and the plaintiff's claims "must arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (internal quotations and citations omitted).

The Eighth Circuit has identified five factors for courts to consider in assessing a defendant's minimum contacts: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties.

*Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073-74 (8th Cir. 2004).  The factors are interrelated and are considered together.  *See K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592-93 (8th Cir. 2011) ("Although the first three factors are primary factors, and the remaining two are secondary factors, we look at all of the factors and the totality of the circumstances in deciding whether personal jurisdiction exists."); *see also Myers*, 689 F.3d at 912-13 (emphasizing need to consider totality of circumstances in determining whether personal jurisdiction exists, as well as need for flexible approach when construing "relate to" aspect of Supreme Court's standard).

ADM argues that Crane relies solely on its general contacts with Missouri to establish personal jurisdiction, and that her cause of action is unrelated to ADM's connections with the state.  Crane offers ADM's business locations, marketing efforts, and sponsorship of local rabbit shows within Missouri as evidence of sufficient contacts with the forum state.  Crane argues that ADM "could reasonably anticipate being haled into court in a state in which the company does business, especially when it is advertising and selling formulated animal feed in a county of Illinois bordering Missouri."  (ECF No. 37 at 14).

Upon consideration of the circumstances present in this case, the Court finds the exercise of personal jurisdiction over ADM to be consistent with traditional notions of fair play and substantial justice.  Not only does ADM conduct business in Missouri through its ten business locations, but it also purposely directs its products at Missouri by actively soliciting Missouri residents like Crane through in-state marketing efforts, including direct mailings, sponsorship of local rabbit shows, social media posts, and promotional packaging of its product which it sells in

state.  The Court therefore determines that the nature, quality, and quantity of ADM's contacts within the state weigh in favor of finding personal jurisdiction over ADM.

As to the connection between ADM's contacts and Crane's cause of action, the amended complaint alleges that Crane was subject to ADM's marketing efforts in Missouri, that she responded to such solicitations by purchasing the Feed in a bordering Illinois county, and that she was ultimately injured as a result.  The Court finds that Crane's purported injuries are sufficiently related to ADM's marketing activities within Missouri.  *See Ford Motor Co.*, 592 U.S. at 365-66 (finding personal jurisdiction existed over out-of-state car manufacturer, where passengers in forum states were injured in car accidents involving vehicles designed and manufactured elsewhere; determining Ford had "systematically served" market in forum states through advertising, selling, and servicing of models of vehicles at issue); *Myers*, 689 F.3d at 913 (finding personal jurisdiction existed over out-of-state casino operator, where customer alleged he was assaulted in Missouri by individuals who had observed him cash out his gambling winnings; "While Myers's injuries did not arise out of Casino Queen's advertising activities in a strict proximate cause sense, his injuries are nonetheless related to Casino Queen's advertising activities because he was injured after responding to the solicitation.").  The Court therefore concludes that ADM purposely directed its activities at Missouri and availed itself of the privilege of conducting business here, and that its actions in doing so ultimately gave rise to Crane's cause of action.

Finally, Missouri "obviously has an interest in providing a forum" for its residents, *K-V Pharm. Co.*, 648 F.3d at 595, and the Court has been presented with no reason as to why it would be inconvenient for ADM to litigate here.  Based on the allegations set forth in the Amended

11

Complaint, and in view of the relevant factors, the Court finds that Crane has made a prima facie showing that ADM is subject to personal jurisdiction.

**B.   *Failure to State a Claim***

A complaint must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level…" *Id.* at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Courts must liberally construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true.  *See Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (stating that in a motion to dismiss, courts accept as true all factual allegations in the complaint); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (explaining that courts should liberally construe the complaint in the light most favorable to the plaintiff).

**1.   Count I: Breach of Implied Warranty of Merchantability**

Under Missouri law, a warranty that goods are "merchantable" is "implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Mo. Rev. Stat. § 400.2-314.  To be "merchantable," goods must meet the following qualifications:

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

12

> (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
>
> (e) are adequately contained, packaged, and labeled as the agreement may require; and
>
> (f) conform to the promises or affirmations of fact made on the container or label if any.

Mo. Rev. Stat. § 400.2-314(2).

To state a claim for a breach of implied warranty of merchantability, a plaintiff must allege: "(1) that a merchant sold goods, (2) which were not 'merchantable' at the time of the sale, (3) injury and damages to the plaintiff or [her] property (4) which were caused proximately or in fact by the defective nature of the goods, and (5) notice to the seller of the injury." *Macormic v. Vi-jon, LLC*, 4:20CV1267 HEA, 2021 WL 6119166, at *6 (E.D. Mo. Aug. 6, 2021) (citing *Hope v. Nissan N.A., Inc.*, 353 S.W. 3d 68, 90 (Mo. Ct. App. 2011)).

In Paragraph 35 of her amended complaint, Crane alleges that "[t]he Feed is merchantable" and conforms with the six above-mentioned qualifications, which she sets out in detail. (Amended Compl. ¶ 35). Crane subsequently alleges that "[a]t the time of the sale to Plaintiff, the Feed was not merchantable in that the Feed was unfit for the purpose for which it was designed." *Id.* ¶ 39. ADM argues that Plaintiff has failed to state a claim for relief of breach of implied warranty of merchantability because Crane's amended complaint allegations, specifically in Paragraph 35, "argue that the product was merchantable." (ECF No. 34 at 4). In response, Crane clarifies that her intent behind this allegation was merely to set forth the statutory elements of a merchantable product because ADM had represented the Feed as "complete feed" and otherwise merchantable, and that she specifically alleges elsewhere that at

13

the time of the sale the Feed was not merchantable. Crane further indicates her willingness to strike Paragraph 35 of the Amended Complaint.[1]

The Court is unconvinced by ADM's semantical argument that Crane has conceded the merchantability of the Feed. The Court finds that Crane has otherwise adequately pled a claim for breach of implied warranty of merchantability.

### 2. Count III: Violation of the MMPA

The MMPA declares unlawful the use "of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or concealment, suppression, or omission of any material fact in connection with the sale or *advertisement* of any merchandise in trade or commerce … in or from the state of Missouri." Mo. Rev. Stat. § 407.020.1 (emphasis added). The MMPA authorizes a private damages action by any consumer who "purchases" merchandise primarily for "personal, family, or household purposes," and thereby "suffers an ascertainable loss of money or property … as a result of the use … by another person of a method, act, or practice declared unlawful by section 407.020." Mo. Rev. Stat. § 407.025.1.

To state a claim under the MMPA, a plaintiff must plead that she "'(1) purchased merchandise from [the defendant]; (2) for personal, family or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful under the MMPA.'" *Vitello v. Natrol, LLC*, 50 F.4th 689, 693 (8th Cir. 2022) (quoting *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308 S.W.3d 308, 311 (Mo. Ct. App. 2016)). "Claims alleging deceptive practices under the MMPA sound in fraud and are subject to Rule 9(b)'s

---

[1] In its reply brief, ADM asserts that Crane failed to provide adequate notice of her injury. ADM does not raise this argument in its opening brief, and it is therefore not properly before the Court at this time.

14

heightened pleading standard." *Hennessey v. Gap, Inc.*, 86 F.4th 823, 827 (8th Cir. 2023) (citation omitted).

ADM asserts Crane has failed to state a claim for relief under the MMPA because she does not allege that the Feed was purchased in or from Missouri or for household purposes. ADM contends that Crane's purchasing of the Feed was instead for business purposes. Crane responds that ADM's advertising of the Feed is subject to the provisions of the MMPA, and that her purchasing of the Feed for a rabbitry she personally operates constitutes "personal use."[2]

The Court initially notes that Crane's purchasing of the Feed in Illinois is irrelevant here, given that ADM, as discussed in depth *supra*, advertised the Feed within Missouri in an effort to solicit business from Missouri residents like Crane. Nevertheless, the Court is persuaded by ADM's argument related to Crane's purpose in purchasing the Feed. The Court finds Crane's assertion that she purchased the Feed for personal use to be incongruous with her amended complaint allegations that she "raised over one hundred (100) adult breeding rabbits *for the purpose of breeding and selling their progeny as show rabbits*." (Amended Compl., ¶ 11 (emphasis added)). Crane's claim for damages is predicated on business loss, and it will necessarily involve a determination regarding her loss of profits associated with her "future progeny and breeding stock." The fact that Crane personally owned her rabbitry, as opposed to running it through an entity, is seemingly irrelevant since she operated the rabbitry for a business purpose. Although the Court recognizes the broad scope of the MMPA, the Court cannot

---

[2] The parties also dispute whether Crane has met the heightened pleading standard of Rule 9(b) with respect to her misrepresentation claim, which the Court notes presents in actuality as an omission claim. The Court finds that it need not determine these issues at this time, however, because it finds Crane has failed to adequately plead that she purchased the Feed for personal, family, or household purposes.

reconcile Crane's purported purpose in purchasing the Feed as one for personal use with her claim for damages arising from her loss of business profit. The Court therefore concludes that Crane has failed to state a claim for relief under the MMPA.

## Conclusion

In view of the foregoing, the Court finds that Crane has made a prima facie showing of personal jurisdiction in this matter. The Court further finds that Crane has failed to state a claim for relief under the MMPA.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Archer Daniels Midland Company's Motion to Strike and Dismiss Count I and Dismiss First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) (ECF No. 34) is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Plaintiff Arla Crane's claim of violation of the Missouri Merchandising Practices Act, as asserted in Count III of the Amended Complaint, is **DISMISSED with prejudice**.

*[Signature: Ronnie L. White]*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this __31st__ day of May, 2024.